IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| United States *ex rel.* Per Bukh, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 11 C 3701 |
| v. | ) | |
| | ) | |
| Guldmann, Inc., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Per Bukh filed this *qui tam* action on behalf of the public against Defendant Guldmann, Inc. alleging that Guldmann made false claims and statements in violation of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq*. Specifically, Bukh contends that Guldmann made false claims by (1) offering certain of its commercial customers a greater pricing discount than that offered to the United States Government in violation of the "best price" clause found in its Federal Supply Schedule ("FSS") Contract with the Department of Veteran's Affairs ("VA"), and (2) selling products to the Government that were not manufactured in the United States or a designated country in violation of the Trade Agreements Act ("TAA"), 19 U.S.C. §§ 2501 *et seq*. Bukh alleges that Guldmann was aware of its obligation to disclose this information and instead knowingly submitted false claims for reimbursement by the Government surrounding these products. The Government declined to intervene.

Guldmann now moves this Court to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(3), 12(b)(5), 12(b)(6), 9(b), and 28 U.S.C. §1406(a). In the alternative, Guldmann moves to transfer this case to the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a). For the following reasons, the Court grants Guldmann's Motion to

Transfer. Because the Court grants the Motion to Transfer, it declines to rule on Guldmann's grounds for dismissal.

## BACKGROUND

The following facts are taken from Bukh's Second Amended Complaint and Guldmann's affidavit in support of transfer. *See, e.g., Simonian v. Monster Cable Products, Inc.*, 821 F. Supp.2d 996, 998 (N.D. Ill. 2010); *Simes v. Jackson Nat'l Life Ins. Co.*, No. 05 C 3816, 2005 WL 2371969, at *2 (N.D. Ill. Sept. 22, 2005) (courts are not limited to allegations in the complaint and may consider affidavits when addressing a motion to transfer).

Bukh is an individual residing in Denmark. (Dkt. 29, Complaint ¶ 8; Dkt. 46, Pl. Resp. at 7). He joined Guldmann in October 2004 as its Controller and served in this position until March 2010. (Compl. ¶ 8). Guldmann is a producer of medical equipment and supplies, is incorporated, and maintains its corporate headquarters in Tampa, Florida. (*Id.* at ¶ 9; Dkt. 45-1, Anders Drechsler Jensen Affidavit ¶4). Guldmann's sales offices in the United States are in Belmont, Massachusetts and Santa Rosa, California. (Jensen Aff. ¶4). Guldmann maintains all of its documents and electronic records pertaining to its contracts, manufacture, and delivery of products at the corporate headquarters in Tampa. (*Id.* ¶8). The majority of Guldmann's employees referenced in the Complaint reside in Tampa. (*Id.* ¶9).

On June 21, 2004, Guldmann entered into the FSS Contract with the VA National Acquisition Center located in the Northern District of Illinois. (Compl. ¶s 9, 12). The FSS Contract was available for use by all government agencies across the nation. (*Id.* ¶18). Vendors entering FSS contracts with the VA must provide the Government with the lowest net price at which the vendor sells its products without regard to quantity, terms, or conditions. (*Id.* ¶17). When negotiating the FSS Contract, Guldmann provided the Government with a document

showing the discounts it provided to different classes of customers. (*Id.* ¶27). Guldmann stated that the highest discount it provided to any customer was fifty percent off with no minimum quantity sold. (*Id.*). Guldmann provided the Government an additional one percent discount on orders of fifteen pieces or more of the same item in the same order for certain products in order to provide the Government with the lowest price. (*Id.*). Not long after entering into the FSS Contract, Guldmann offered one of its customers, Alpha Modalities LLC, a 73 percent discount on a certain product. (*Id.* ¶30). This additional discount was never offered to the Government.

Bukh alleges that several emails in this time period demonstrate Guldmann's awareness of its obligation to provide the Government with its "best price" and its breach of that obligation by offering special rates to Alpha. (*Id.* ¶33). On November 3, 2008, Guldmann's President Anders Drechsler wrote in an email:

> We can't start showing a discount of 60% (for example) in [Guldmann's accounting system] just to show a certain margin % split between material and installation. This would give the VA the option to insist on a 60% discount on material going forward but also retroactively, because they should be offered the best price. Our contract is up for renewal before June 2009 so it is prime-time for an audit right now.

(*Id.* ¶42). Guldmann maintained its special pricing for Alpha. (*Id.* ¶43). From November 18, 2006 to November 17, 2009, Guldmann impermissibly rebated nearly $1.1 million to Alpha through special pricing, although the special pricing continued through March 2010. (*Id.* ¶s 47, 49). Guldmann concealed the special pricing offered to Alpha by issuing credits post-sale, characterized as "referral fees." (*Id.* ¶51). Guldmann offered special discounts and pricing not offered to the Government to other customers as well, including the University of Pennsylvania Hospital, Blueleaf, Kinetic Concepts Inc., New England Medical Systems, Gwinnet, and Hoar Construction. (*Id.* ¶s 51, 53, 54, 56, 58, 60).

3

On September 17, 2009, Guldmann sent a Request for Modification regarding the FSS Contract to VA Contract Specialist Richard M. Amesquita. (*Id.* ¶63). The request falsely stated that a product was manufactured in Denmark when it was actually manufactured in China, in violation of the TAA. (*Id.* ¶s 65, 76). The request also omitted the superior pricing and discounts offered to other customers. (*Id.* ¶s 65, 69).

## LEGAL STANDARD

Section 1404 of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A court may transfer a case under § 1404 when (1) venue is proper in the transferor district; (2) venue is proper in the transferee district; (3) the transfer will serve the convenience of the parties and witnesses; and (4) the transfer will serve the interests of justice. *See, e.g., Hanover Ins. Co. v. Northern Building Co.*, 891 F. Supp.2d 1019, 1025 (N.D. Ill. 2012); *see also Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

## DISCUSSION

As an alternative to its Motion to Dismiss, Guldmann moves to transfer this case under 28 U.S.C. § 1404(a) to the Middle District of Florida. As a preliminary matter, venue is proper both in the Northern District of Illinois and the Middle District of Florida. Venue is proper here because there is no question that Guldmann transacts business within the district, as the VA which signed the FSS Contract underlying the claims alleged is located here. *See, e.g., Schwarz v. National Van Lines, Inc.*, 317 F. Supp.2d 829, 834 (N.D. Ill. 2004) (venue under 28 U.S.C. § 1391(b) was proper where the plaintiff entered into the contract). The Middle District of Florida is also an appropriate venue because Guldmann maintains its corporate headquarters in Tampa,

Florida. *See* 31 U.S.C. § 3732(a) (any False Claims action may be brought in any judicial district where the defendant resides). Moreover, Bukh does not challenge the Middle District of Florida as an improper venue. Therefore, the question before the Court is whether transferring this case would increase the convenience of the parties and witnesses and advance the interests of justice. *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986).

To determine whether the transfer will serve the convenience of the parties and the interests of justice, the Court must make an "individualized, case-by-case" determination." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Guldmann, as the moving party, bears the burden of showing that the transferee forum is clearly more convenient than the transferor forum. *Heller Fin.*, 883 F.2d at 1293 (quotation marks and citation omitted). This Court is vested with a great deal of discretion when determining whether to grant or deny a motion to transfer. *See Coffey*, 796 F.2d at 219. Both private interests and public interests of justice are considered when deciding a motion to transfer.

## I. Private Interests

Courts consider a wide range of convenience factors, including "(1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease and access to sources of proof, and (4) the convenience of the parties [and witnesses]." *See Simonian v. Maybelline LLC*, No. 10 C 1615, 2011 WL 814988, at *6 (N.D. Ill. March 1, 2011) (quoting *First Nat. Bank v. El Camino Resources, Inc.*, 447 F. Supp.2d 902, 912 (N.D. Ill. 2006) (Guzman, J.).

### A. Bukh's Choice of Forum

Bukh is correct that ordinarily, the plaintiff's choice of forum is given "substantial weight" in the transfer analysis. *See, e.g., Lewis v. Grote Industries, Inc.*, 841 F. Supp.2d 1049, 1053 (N.D. Ill. 2012); *United Airlines, Inc. v. Mesa Airlines, Inc.*, 8 F. Supp.2d 796, 798 (N.D.

Ill. 1998). This high deference, however, is considerably diminished for a *qui tam* plaintiff, whose choice of venue is afforded only "slight deference." *See, e.g., Monster Cable Prod*, 2010 WL 4822899, at *1 (relator not entitled to substantial deference"); *Zojo Solutions, Inc. v. Leviton Mfg. Co., Inc.*, No. 10 C 881, 2010 WL 4257546, at *1 (N.D. Ill. Oct. 20, 2010) (Grady, J.) ("little weight" given to relator's choice of venue); *Seely v. Cumberland Packing Corp.*, No. 10 C 2019, 2010 WL 5300923, at *3 (N.D. Cal. Dec. 20, 2010) (relator's choice of forum "deserves little deference"). Diminished deference in a *qui tam* action is appropriate because Bukh is bringing suit not solely for his own benefit, but also to benefit the United States. *See Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772-774 (2000). Because Bukh filed this suit in the Northern District of Illinois, the Court begins by giving that choice "slight deference."

This initial deference is further eroded by the fact that Bukh is not a resident of the Northern District of Illinois. *See Lewis*, 841 F. Supp.2d at 1053 (weight given to plaintiff's choice of forum is lessened when the plaintiff is not a resident of the district he has chosen) (citing *Abbott v. Church & Dwight, Inc.*, No. 07 C 3428, 2007 WL 3120007, at *3 (N.D. Ill. Oct. 23, 2007). Bukh is a resident of Denmark. Because he is a relator and does not reside in the district where he filed suit, his initial choice of forum is granted minute weight.

## B. Situs of Material Events

Any deference granted to Bukh for choosing the initial venue is further lessened because the situs of the material events giving rise to this lawsuit occurred within the Middle District of Florida. Bukh claims that the alleged false statements took place in the Northern District of Illinois when the VA National Acquisition Center located here entered into the FSS Contract with Guldmann. The defect with this argument is that the relevant conduct leading to this lawsuit

6

is not the final signing of the FSS Contract but rather the business decisions made at Guldmann's corporate headquarters to enter into transactions with its other customers containing superior discounts, violating its duty to offer the Government the "best price" for its medical equipment. Additionally, the FSS Contract entered into was a nationwide agreement available to any and all federal agencies. Because false claims liability turns largely on whether the fraudulent claim for payment was made knowingly, *see* 31 U.S.C. § 3729(a)(1)(A), it is fitting that the situs of relevant events is where Guldmann's corporate operations are found. *See Maybelline*, 2011 WL 814988, at *7 (in false patent marking case, situs of material events was where decisions to package, market, distribute, and eventually sell products with expired patents were made). In this case, Guldmann is headquartered in Florida and any documents that could reveal direct or circumstantial evidence of Guldmann's knowledge, deliberate ignorance, or reckless disregard to the making of false claims to the Government would be in Florida. (Jensen Aff. ¶s 7-8). The situs factor therefore supports transfer.

### C. Location of Documents and Sources of Proof

The documents related to Guldmann's contracts, manufacture and delivery are located in Tampa, Florida. (Jensen Aff. ¶8). Copies of the actual FSS Contract will probably be found in both the Northern District of Illinois and the Middle District of Florida. Nonetheless, most of these documents will likely be produced electronically, so the location of the documents is a neutral factor. *See Leuders v. 3M Co.*, No. 08 C 2457, 2008 WL 2705444, at *3, (N.D. Ill. July 9, 2008) ("When documents are easily transferable, access to proof is a neutral factor.").

Other evidence, such as the actual medical equipment and supplies produced by Guldmann, may be relevant depending on Bukh's reliance on false statements made with respect to the manufacturing origins of these products. The Second Amended Complaint alleges that

these products are shipped to and repackaged in Florida. These tangible items will not be as easily transferable as the before mentioned documents. Because these items are more easily available in the Middle District of Florida than any other district, this factor weighs somewhat in favor of transfer.

### D. Convenience of the Parties

Guldmann's corporate headquarters in Tampa are only ten miles away from the Middle District of Florida courthouse, but over 1,100 miles from Chicago. The majority of Guldmann's executives and corporate employees all reside in the Middle District of Florida. Significantly, these employees would incur significant travel and lodging expenses, while also missing work hours, to attend a trial in Chicago. Trial in Tampa would be significantly more convenient for Guldmann. On the other side, Bukh lives and works in Denmark. Traveling to Tampa instead of to Chicago will not significantly impact Bukh's transit time, and he does not allege as much. Bukh must travel a significant distance regardless of the location of the trial. Consequently, on balance, the inconvenience and expense to Guldmann of coming to Chicago weighs more heavily than any inconvenience Bukh may experience of traveling to Tampa. This factor accordingly weighs in favor of transfer.

### E. Convenience of the Witnesses

The convenience of witnesses factor tilts the scale further toward transfer to the Middle District of Florida. The Court may not transfer a case for the convenience of one party's witnesses at the expense of the other party's witnesses. *See Heller Fin., Inc.*, 883 F.2d at 1293. When evaluating the availability and convenience of witnesses, the Court should consider not only the quantity of witnesses in each forum but also the nature and relevance of their testimony.

*See, e.g., Lewis*, 841 F. Supp.2d at 1054; *Howell v. Joffe*, 478 F. Supp.2d 1014, 1023 (N.D. Ill. 2006) (Bucklo, J.).

The Court agrees with Guldmann that the majority of the witnesses in this case will be Guldmann employees who reside in the Middle District of Florida. Bukh contends that government witnesses reside in Illinois but outside of naming VA Contract Specialist Richard M. Amesquita, Bukh fails to identify, even generally, who these potential witnesses are or how they would be able to provide relevant testimony about Guldmann's practice of knowingly submitting false claims. The Court has a difficult time imagining what kind of "alleged operative facts" government witnesses would testify to. On the other hand, the testimony of current and former Guldmann employees, who are the principal sources of discoverable material, far exceeds any testimony offered by Amesquita. *See, e.g., Zojo Solutions, Inc.*, 2010 WL 4257546, at *3 (in false patent marking case, plaintiff's claim "stems from" defendant's corporate decisions, so "defendant's evidence will constitute the bulk of proof").

The affidavit of Anders Drechsler Jensen, President of Guldmann, states that Guldmann's decision-making employees and physical and electronic records pertaining to Bukh's allegations regarding pricing practices are located in Tampa. (Jensen Aff. ¶8). Moreover, both Guldmann employees identified by name in Bukh's Second Amended Complaint, Drechsler and Vice President Linda Bowman, are located at the Tampa headquarters. Bukh offers no credible evidence to rebut the fact that the vast majority of witnesses with information relevant to this lawsuit are in Florida. The convenience of witnesses factor thus justifies transfer.

The situs of relevant conduct is within the Middle District of Florida, and it is more convenient for the witnesses and parties to litigate there. These three factors overcome the

negligible deference afforded to Bukh's choice of forum. Accordingly, the private interests favor transfer.

## II. Interests of Justice

The final consideration under § 1404(a) is whether a change in venue would serve the interests of justice. *See United Air Lines*, 8 F. Supp.2d at 800. The interests of justice component focuses on the efficient and fair administration of the courts rather than on the interests of the litigants themselves. *See Coffey*, 796 F.2d at 220. In evaluating this factor, the Court considers the relative speed with which the case will go to trial, the familiarity of the judge with the applicable law, the relationship of the parties and claims to the forum, and access to sources of proof. *See Maybelline*, 2011 WL 814988, at *8.

First, there is no substantial difference in the efficiencies of the two courts. The median number of months from filing to disposition, and the median number of months from filing to trial both indicate the likelihood of a speedy trial. *See Tingstol Co. v. Rainbow Sales, Inc.*, 18 F. Supp.2d 930, 934 (N.D. Ill. 1998). According to the 2013 Federal Court Management Statistics, the median number of months from filing to disposition of a civil case in the Northern District of Illinois is 6.8 months, whereas the Middle District of Florida's median amount of time for disposing of civil cases is 9.2 months. Federal Court Management Statistics 2013, *available at* http://www.uscourts.gov/viewer.aspx?doc=/uscourts/Statistics/FederalCourtManagementStatistic s/2013/district-fcms-profiles-december-2013.pdf&page=1 (last visited April 18, 2014). The median number of months between filing a civil action and going to trial in the Northern District of Illinois is 33.1 months, whereas the filing to trial date for a civil action in the Middle District of Florida is 23.5 months. *See id.* While the parties may receive an earlier trial date in the Middle

District of Florida, they are more likely to receive a quicker resolution of their claim in the Northern District of Illinois. This factor favors neither district.

Second, because the false claims action derives from federal law, both districts have comparable knowledge and experience for handling the case. *See United States ex rel. Heathcote Holdings Corp., Inc. v. Leapfrog Enterprises, Inc.*, No. 10 C 1471, 2010 WL 5439721, at *3 (because the case arose under federal law, either court would have the same degree of familiarity).

However, the efficiency of discovery and trial proceedings favors transfer. As stated above, the situs of material events occurred at Guldmann's corporate headquarters in Florida, and the majority of the sources of proof are in Florida. Consequently, Florida has a closer connection to this specific cause of action. Likewise, Florida has a strong interest in ensuring that its corporations are following the law, especially when dealing with the Government. Although states generally have an interest in providing an appropriate forum for their citizens to seek redress against out-of-state defendants, this consideration is far less persuasive for a *qui tam* plaintiff like Bukh, especially because Bukh is not a resident of Illinois. *See Hill-Jackson v. FAF, Inc.*, 10 C 364, 2010 WL 3403882, at *7 (N.D. Ill. Aug. 25, 2010). Therefore, the interests of justice component of § 1404(a) reinforces the Court's determination that this matter should be transferred to the Middle District of Florida.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court grants Guldmann's Motion to Transfer to the Middle District of Florida.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 24, 2014